*L637 pldgs*

ENDORSED
F I L E D
San Francisco County Superior Court

APR 1 1 2007

GORDON PARK-LI, Clerk
BY: ___WESLEY RAMIREZ___
Deputy Clerk

1  MICHAEL J. DALEY, ESQ. (State Bar No.: 157699 )
   DAVID A. KLECZEK, ESQ. (State Bar No. 244045)
2  **RYAN & LIFTER**
   A Professional Corporation
3  2010 Crow Canyon Place, Suite 330
   San Ramon, CA 94583
4  Tel:  (925) 884-2080
   Fax:  (925) 884-2090

5

6  Attorneys for Defendant/Cross-Complainant
   ADELPHIA COMMUNICATIONS
   CORPORATION, aka Century Mendocino Cable
7  TV dba Adelphia Cable Communications

8

9                    SUPERIOR COURT OF CALIFORNIA

10                   COUNTY OF SAN FRANCISCO

11  SIFA TUIAKI, et al.,                    Case No.: CGC 03-419761

12              Plaintiffs,                 **ADELPHIA'S SECOND AMENDED**
                                            **CROSS COMPLAINT FOR BREACH OF**
13  v.                                      **CONTRACT, EXPRESS AND IMPLIED**
                                            **INDEMNITY, CONTRIBUTION,**
14                                          **APPORTIONMENT OF FAULT AND**
                                            **DECLARATORY RELIEF AGAINST**
15  PACIFIC GAS & ELECTRIC COMPANY,         **PAULEY CONSTRUCTION, INC. AND**
    et al.,                                 **ROES 1 THROUGH 50, INCLUSIVE**
16

17              Defendants.

18  ──────────────────────────────

19  ADELPHIA COMMUNICATIONS
    CORPORATION, aka CENTURY
20  MENDOCINO CABLE TV dba ADELPHIA
    CABLE COMMUNICATIONS,

21
                Cross-Complainant,
22
    v.
23
    PAULEY CONSTRUCTION, INC., and
24  ROES 1 to 50, INCLUSIVE,

25              Cross-Defendants.

26  ──────────────────────────────

27       Cross-complainant, ADELPHIA COMMUNICATIONS CORPORATION also known as

28  Century Mendocino Cable TV dba Adelphia Cable Communications (hereinafter "Cross-

EXHIBIT ___C___

LAW OFFICES OF
**RYAN &
LIFTER**
A PROFESSIONAL CORPORATION
2010 Crow Canyon Pl. Ste. 330
San Ramon, CA 94583-1433
TEL: (925) 884-2080
FAX: (925) 884-2090

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\L637\Pleadings\2ndAmendedX-Complaint.wpd

1   Complainant") complains as against cross-defendants, Pauley Construction, Inc. and Roes 1 through

2   50, inclusive, and each of them, as follows:

3                                    **GENERAL ALLEGATIONS**

4         1.        The true names and capacities, whether individual, corporate, associate, or otherwise,

5   of cross-defendants ROES 1 through 50 are unknown to cross-complainant, who therefore sues said

6   cross-defendants by such fictitious names. Cross-complainant is informed and believes, and thereon

7   alleges, that each of the cross-defendants designated herein as a fictitious cross-defendant is in some

8   manner responsible for the events and happenings referred to, and is obligated to indemnify cross-

9   complainant as alleged herein. Cross-complainant prays for relief to amend this cross-complaint to

10  allege their true names and capacities when the same have been ascertained.

11        2..       Cross-complainant alleges upon information in the belief that cross-defendant Pauley

12  Construction, Inc. (hereinafter "Pauley") is a duly licensed corporation authorized to do business in

13  California.

14        3.        On or about July 2, 2000, cross-defendant Pauley entered into a contract (the

15  "Contract") with Century Mendocino Cable TV dba Adelphia Cable Communications (hereinafter

16  "Adelphia"). Attached hereto as Exhibit A is a true and correct copy of the Contract, and incorporated

17  herein by reference.

18        4.        The Contract set out a fixed price for every service Pauley performed relating to Cross-

19  Complainant's cable operations in Mendocino, California.

20        5.        The Contract required Pauley to submit "weekly invoicing by node number" set by the

21  fixed price schedule as alleged in paragraph 3. The Contract stated Cross-Complainant would make

22  payment on those invoices approximately sixty days "after approval of the invoice by the system."

23        6.        For the period of July 2000 through November 2001, Adelphia paid Pauley

24  $19,009,889.47 pursuant to the Contract.

25        7.        For the period of December 2001 through June 2002, Adelphia paid Pauley

26  $10,476,904.19 pursuant to the Contract.

27  ///

28  ///

LAW OFFICES OF
**RYAN &
LIFTER**
A PROFESSIONAL CORPORATION
2000 Crow Canyon P. Ste. 100
San Ramon, CA 94583-1433
TEL: (925) 884-2080
FAX: (925) 884-2090

2

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\L637\Pleadings\2ndAmendedX-Complaint.wpd

1       8.     On or about January, 2002, Pauley executed an amendment to the Contract (the

2  "Amendment"). Attached hereto as Exhibit B is a true and correct copy of the Amendment, and

3  incorporated herein by reference.

4       9.     On June 25, 2002, Century Mendocino Cable Television, Inc. filed for voluntary

5  Chapter 11 bankruptcy in the United States Bankruptcy Court, Southern District of New York.

6       10.    On September 30, 2003, Pauley submitted a proof of claim in *In Re Century*

7  *Mendocino Cable Television, Inc.*, 02-41780, United States Bankruptcy Court, Southern District of

8  New York ("Proof of Claim"). The proof of claim made claims for invoices dated from November 15,

9  2001 through July 16, 2002 for a total of $4,251,595.08. Attached hereto as Exhibit C is a true and

10  correct copy of Pauley's Proof of Claim, which is incorporated herein by reference.

11      11.    The proof of claim was for services Pauley provided pursuant to the Contract and the

12  Amendment.

13      12.    On December 18, 2003, Pauley assigned all its rights pursuant to the Proof of Claim to

14  CanPartners Investments IV, LLC for "good and valuable consideration." Attached as Exhibit D is a

15  true and correct copy of said "Assignment."

16      13.    Pauley represented in the Assignment that it had "no liability or obligation related to or

17  in connection with the Claim or the Case . . ." and that "the Claim is not subject to any defense, claim

18  or right of set off, reduction impairment . . . ." (Exh. D, ¶ 4(l) and (o).)

19      The Assignment defined the "Claim" as

20          "The Claim is defined as all of Seller's right, title and interest in the
        Proof of Claim (defined below), all rights to receive principal, interest,

21          all rights of stoppage in transit, replevin and reclamation, fees, expenses,
        damages, penalties and other amounts in respect of or in connection

22          with any of the foregoing, and all other claims, causes of action and
        voting and other rights arising under or relating to any of the foregoing,

23          including, without limitation, all of Seller's rights to receive cash,
        securities, instruments and/or other property or distributions issued in

24          connection with any of the foregoing or the Case. The Claim includes
        claims against persons other than the Debtor or that arise under the

25          Bankruptcy Code or any applicable law."

26      14.    On or about April 7, 2006, CanPartners Investments IV, LLC transferred the

27  Assignment to Latigo Master Fund, Ltd.

28  ///

LAW OFFICES OF
**RYAN &**
**LIFTER**
A PROFESSIONAL CORPORATION
2010 Crow Canyon Pl. Ste. 330
San Ramon, CA 94583-1433
TEL: (925) 884-2080
FAX: (925) 884-2090

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\L637\Pleadings\2ndAmendedX-Complaint.wpd

15.     The Bankruptcy Court allowed payment of $4,251,595.08 on the Proof of Claim, plus interest of $1,575,924.58 for a total allowed amount of $5,827,519.66.

16.     The Proof of Claim was satisfied by payment of $2,789,168.00 on February 13, 2007 and common stock of Time Warner Cable valued at $3,038,351.54 on or about February 13, 2007.

17.     Cross-Complainant refers to the operative Complaint filed herein by the plaintiffs in the matter entitled *Sija Tuiaki and Lupe Tuiaki v. Adelphia Communications Corporation, et al*, San Francisco County Superior Court Case No. CGC-04-432476 (consolidated with CGC-03-419761 and related consolidated actions), a copy of which is attached hereto as Exhibit E to this cross-complaint and incorporated herein by reference, except that cross-complainant denies each and every, all and singular, generally and specifically, the allegations contained therein and so far as said allegations relate to or refer to this cross-complaint.

18.     Cross-Complainant is informed and believes and on that basis alleges, that at all times relevant each of the cross-defendants were and are doing business in the state of California, County of San Francisco, and was the agent and employee of each of the remaining cross-defendants, and was acting within the scope and purpose of said agency and employment.

## FIRST CAUSE OF ACTION

**(Breach of Contract Against Pauley Construction, Inc. and Roes 1 - 10, inclusive only – Full Performance)**

19.     Cross-Complainant incorporates by referenced herein paragraphs 1 through 18 of the general allegations.

20.     Cross-Complainant fully performed its obligations pursuant to the Contract and the Amendment by paying all approved invoices dated between July, 2000 and November 14, 2001, and by payment in full on Pauley's Proof of Claim.

21.     Pursuant to Exhibit A, Pauley and the ROE cross-defendants agreed to keep in force the following insurance:

**23.     INSURANCE**

All policies shall contain all endorsements, including but not limited to independent Contractors, broad form damage, products and completed

LAW OFFICES OF
**RYAN &
LIFTER**
A PROFESSIONAL CORPORATION
2950 Cents Canyon P. Ste. 520
San Ramon, CA 94583-1433
TEL: (925) 884-2080
FAX: (925) 884-2090

4

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\L637\Pleadings\2ndAmendedX-Complaint.wpd

1  operations, explosion, collapse and underground hazard, comprehensive form,

2  contractual insurance and personal injury. No policy may be canceled or

3  materially changed without Adelphia's written consent. Adelphia shall receive

4  no less than sixty (60) days prior written notice of any such proposed

5  cancellation or material change. Adelphia reserves the right to terminate this

6  Agreement in the event of a breach or noncompliance with this Agreement.

7      The Contractor shall furnish Adelphia with a copy of all policies of

8  insurance required by this Section 24 as well as a certificate of insurance

9  evidencing the existence of the aforementioned insurance and naming Adelphia

10  as additional insured, delivered to the appropriate municipality, power

11  company, telephone company and such other parties as may be required,

12  certificates of insurance evidencing such insurance overage and naming such

13  parties as additional named insured.

14      The contractor shall obtain, as its sole cost and expense, any additional

15  insurance or added coverage as may be necessary under local law. Adelphia's

16  cable television franchise or advisable in Contractor's opinion to protect all the

17  on-site property and equipment of Adelphia or third parties or any of

18  Contractor's employees or subcontractors.

19      Before commencing work, Contractor shall procure and maintain

20  insurance of the kinds and limits enumerated hereunder and on terms and with

21  an insurance carrier satisfactory to Adelphia. Certificates of such insurance

22  issued by the Contractor's insurance carrier shall be filed with Adelphia before

23  the commencement of such work and shall set forth the following:

24  A.      Workmen's Compensations

25  Contractor's possession of Workmen's Compensation Insurance in accordance with the

26  laws of the State of CALIFORNIA.

27  B.      Comprehensive General Liability

28  Bodily Injury                          $1,000,000 - per occurrence


LAW OFFICES OF
**RYAN &**
**LIFTER**
A PROFESSIONAL CORPORATION
2000 Crow Canyon Pl. Ste. 330
San Ramon, CA 94583-1433
TEL: (925) 884-2080
FAX: (925) 884-2090

5

Property Damage                                $1,000,000 - per occurrence

C.    Employer's Liability Coverage        $ 500,000 - per occurrence

D.    Comprehensive Automobile Liability - Including non-owned and hired

coverage

a.    Property damage                $1,000,000

b.    Bodily injury                    $1,000,000

E.    Umbrella Liability Insurance  $5,000,000

F.    Property Damage

That the Contractor has insured in the joint names of Adelphia and the Contractor for

the work to be performed hereunder against all loss or damage from whatever causes,

other than for excepted risks for which insurance cannot be obtained.

G.    Notice of Termination or Cancellation

That the foregoing insurance coverage shall not be terminated or cancelled unless

Adelphia is given sixty (60) days prior written notice by the insurance carrier.

Cross-complainant is to be named as additional named insured

on Pauley's insurance policy under the terms of Exhibit A.

22.    Pursuant to the Contract, Pauley and ROE cross-defendants also agreed to indemnify,

hold harmless and defend cross-complainant against any claims, damages, losses, expenses, and

attorneys' fees that may be sustained by or recovered against them pursuant to the performance of the

Contract by Pauley or any subcontractors hired by Pauley.  However, Pauley has refused to accept

cross-complainant's tender of its defense and indemnity despite cross-complainant's written request

that Pauley accept its defense and indemnity.  The relevant portion of Exhibit A states as follows:

### 24.    INDEMNIFICATION

A.    Contractor agrees to indemnify, defend and hold Adelphia harmless

from any and all liability, claims, damages, causes of action, expenses,

fines, judgments, sums of money awarded by arbitration or otherwise

and any demands whatsoever arising out of or resulting from the acts,

omissions or wrongdoing on the part of any employee, officer, agent,

LAW OFFICES OF
**RYAN &
LIFTER**
A PROFESSIONAL CORPORATION
2000 Crow Canyon Pl, Ste 330
San Ramon, CA 94583-1433
TEL:  (925) 884-2080
FAX:  (925) 884-2090

6

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\L637\Pleadings\2ndAmendedX-Complaint.wpd

servant or representative of Contractor or any subcontractor engaged by
Contractor. This indemnification from any and all liability, claims and
demands whatsoever made by reason of the injury or death of any
person or the physical damage to property or property rights or by reason
of the termination, disturbance, interruption or other interference with
services of any type including, without limitation, any aerial or
underground installation, utility or other facility damaged, harmed or
disturbed, or caused to be damaged, harmed or disturbed by contractor
or subcontractor. Contractor shall be responsible for each and every
violation of easements and rights-of-way caused by the obstruction of
streets, alleys, sidewalks and shall be responsible for any personal injury
or death or physical damage to property resulting from such
obstructions, or violations of easements or rights-of-way.

B.   Contractor shall also be fully responsible for and indemnify, defend and
hold Adelphia harmless from any damages, losses or claims resulting
from Contractor's failure to advise Adelphia of any problem or any
nonconforming existing conditions, or any errors or omissions in the
plans specifications pertaining to work to be performed by Contractor
hereunder in accordance with this Agreement of which it is aware or
reasonably should have been aware.

C.   Contractor also specifically acknowledges and agrees that it shall
indemnify, defend and hold Adelphia harmless from all damages, claims
or liabilities arising out of Contractor's failure to comply with the notice
and mark out provisions of any utility regulation or practice.

D.   Contractor shall defend all suits and claims, and shall hold and save
Adelphia harmless from liability of any nature or kind; including, but
not limited to, costs and expenses for or on any account of infringement
of any article or process supplied by Contractor; and incorporated or sed

LAW OFFICES OF
**RYAN &**
**LIFTER**
A PROFESSIONAL CORPORATION
2010 Crow Canyon Pl. Ste. 100
San Ramon, CA 94583-1433
TEL: (925) 884-2080
FAX: (925) 884-2090

7

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\RL6374\Pleadings\2ndAmendedX-Complaint.wpd

1        in the work to be performed under this Agreement including its use by

2        Adelphia.

3     E.    Contractor shall indemnify, defend and hold harmless Adelphia from

4        and against all suits or claims based upon any injury (including death) or

5        loss to any persons or property that may occur in the course of

6        performance by this Agreement by Contractor whether such claim shall

7        be made by any employee or subcontractor of Contractor or by a third

8        person and whether or not it shall be claimed or found by a court of law

9        or administrative authority that the injury (including death) was caused

10       through the acts, omissions or wrongdoing of Contractor and, at its own

11       expense, Contractor shall defend any and all such actions and shall pay

12       all charges of attorneys and all costs and expenses arising therefrom.

13       The limits of liability provided in any insurance policy shall not be a

14       limit to Contractor's liability.

15    F.    Contractor shall indemnify and hold harmless Adelphia from and

16       against all suits, claims, damages, costs, liabilities, including payment of

17       reasonable attorney's fees, for or on account of infringement of any U.S.

18       patent relating to any article or process supplied by Contractor and

19       incorporated or used in the work to be performed under this Agreement.

20  23.   Pauley also contracted under Paragraph 29 to be responsible for "SAFETY" as follows:

21    A.    Contractor shall be responsible for safety related to and during the performance

22       of the work hereunder. Contractor shall insure that its employees and the

23       employees of its subcontractors are notified of and observe and abide by all

24       safety regulations and laws including but not limited to those issued by

25       Adelphia and any revisions of the foregoing that may hereinafter be applicable.

26  24.   Cross-defendant Pauley and ROE cross-defendants have breached the agreement with

27  cross-complainant by failing to defend and indemnify cross-complainant pursuant to this agreement in

28  ///

LAW OFFICES OF
**RYAN &
LIFTER**
A PROFESSIONAL CORPORATION
2000 Crow Canyon P. Ste. 330
San Ramon, CA 94583-1433
TEL: (925) 884-2080
FAX: (925) 884-2090

8

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMERS\1.637\Pleadings\2ndAmendedX-Complaint.wpd

1   response to cross-complainant's tender of the defense and indemnity to Pauley and ROE cross-

2   defendants.

3          25.    As a result of the foregoing breaches, acts and omissions of cross-defendant Pauley and

4   ROE cross-defendants in breaching the agreement, cross-complainant has been damaged in an amount

5   according to proof, including but not limited to attorney fees and costs in defending this action and is

6   entitled to recover those attorney fees and costs from Pauley and ROE cross-defendants and is further

7   entitled to indemnity.

8                            **SECOND CAUSE OF ACTION**

9                    **(Breach of Contract Against Pauley Const., Inc. and ROES 1-10,**
                     **inclusive only – Waiver)**

10

11         26.    Cross-Complainant incorporates by referenced herein paragraphs 1 through 25 of the

12  general allegations.

13         27.    Upon information and belief, Pauley had actual knowledge of Cross-Complainant's

14  financial problems and slow payment of its invoices beginning in November, 2001 and yet continued

15  performing work pursuant to the Contract.

16         28.    Upon information and belief, Pauley had actual knowledge of Cross-Complainant's

17  financial problems and slow payment in January or February, 2002 when it executed the Amendment

18  attached as Exhibit B.

19         29.    Upon information and belief, Pauley continued to work pursuant to the Contract even

20  though it knew or should have known Cross-Complainant was at risk of filing for bankruptcy

21  protection.

22         30.    Pauley, after it completed construction pursuant to the Contract and its Amendment,

23  filed the Proof of Claim in the bankruptcy matter making a claim for work performed based on the

24  fixed prices set in the Contract and its Amendment.

25         31.    Pauley's represented in its Assignment that the claim was not the subject of

26  controversies, claims or set offs.

27  ///

28  ///



LAW OFFICES OF
**RYAN &
LIFTER**
A PROFESSIONAL CORPORATION
2950 Crow Canyon Pl, Ste 319
San Ramon, CA 94583-1431
TEL:  (925) 884-2080
FAX:  (925) 884-2090

9

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\L637\Pleadings\2ndAmendedX-Complaint.wpd

32.    These facts constitute an implied and express waiver on the part of Pauley for payment of invoices within 60 days of approval, and excuse any alleged lack of performance by Cross-Complainant.

33.    Pursuant to Exhibit A, Pauley and the ROE cross-defendants agreed to keep in force the following insurance:

**23.    INSURANCE**

All policies shall contain all endorsements, including but not limited to independent Contractors, broad form damage, products and completed operations, explosion, collapse and underground hazard, comprehensive form, contractual insurance and personal injury. No policy may be canceled or materially changed without Adelphia's written consent. Adelphia shall receive no less than sixty (60) days prior written notice of any such proposed cancellation or material change. Adelphia reserves the right to terminate this Agreement in the event of a breach or noncompliance with this Agreement.

The Contractor shall furnish Adelphia with a copy of all policies of insurance required by this Section 24 as well as a certificate of insurance evidencing the existence of the aforementioned insurance and naming Adelphia as additional insured, delivered to the appropriate municipality, power company, telephone company and such other parties as may be required, certificates of insurance evidencing such insurance overage and naming such parties as additional named insured.

The contractor shall obtain, as its sole cost and expense, any additional insurance or added coverage as may be necessary under local law. Adelphia's cable television franchise or advisable in Contractor's opinion to protect all the on-site property and equipment of Adelphia or third parties or any of Contractor's employees or subcontractors.

Before commencing work, Contractor shall procure and maintain insurance of the kinds and limits enumerated hereunder and on terms and with

LAW OFFICES OF
**RYAN &
LIFTER**
A PROFESSIONAL CORPORATION
2010 Crow Canyon Pl. Ste. 300
San Ramon, CA 94583-1433
TEL: (925) 884-2080
FAX: (925) 884-2090

10

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\U637\Pleadings\2ndAmendedX-Complaint.wpd

an insurance carrier satisfactory to Adelphia.  Certificates of such insurance

issued by the Contractor's insurance carrier shall be filed with Adelphia before

the commencement of such work and shall set forth the following:

A.    Workmen's Compensations

Contractor's possession of Workmen's Compensation Insurance in accordance with the

laws of the State of CALIFORNIA.

B.    Comprehensive General Liability

Bodily Injury                                    $1,000,000 - per occurrence

Property Damage                             $1,000,000 - per occurrence

C.    Employer's Liability Coverage        $ 500,000 - per occurrence

D.    Comprehensive Automobile Liability - Including non-owned and hired

        coverage

        a.    Property damage                $1,000,000

        b.    Bodily injury                       $1,000,000

E.    Umbrella Liability Insurance  $5,000,000

F.    Property Damage

That the Contractor has insured in the joint names of Adelphia and the Contractor for

the work to be performed hereunder against all loss or damage from whatever causes,

other than for excepted risks for which insurance cannot be obtained.

G.    Notice of Termination or Cancellation

That the foregoing insurance coverage shall not be terminated or cancelled unless

Adelphia is given sixty (60) days prior written notice by the insurance carrier.

Cross-complainant is to be named as additional named insured

on Pauley's insurance policy under the terms of Exhibit A.

34.    Pursuant to Exhibit A, Pauley and ROE cross-defendants also agreed to indemnify,

hold harmless and defend cross-complainant against any claims, damages, losses, expenses, and

attorneys' fees that may be sustained by or recovered against them pursuant to the performance of the

Contract by Pauley or any subcontractors hired by Pauley.  However, Pauley has refused to accept

**RYAN &**
**LIFTER**

11

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\L637\Pleadings\2ndAmendedX-Complaint.wpd

1  cross-complainant's tender of its defense and indemnity despite cross-complainant's written request

2  that Pauley accept its defense and indemnity.  The relevant portion of the Contract states as follows:

3     24.   **INDEMNIFICATION**

4     A.   Contractor agrees to indemnify, defend and hold Adelphia harmless

5          from any and all liability, claims, damages, causes of action, expenses,

6          fines, judgments, sums of money awarded by arbitration or otherwise

7          and any demands whatsoever arising out of or resulting from the acts,

8          omissions or wrongdoing on the part of any employee, officer, agent,

9          servant or representative of Contractor or any subcontractor engaged by

10         Contractor.  This indemnification from any and all liability, claims and

11         demands whatsoever made by reason of the injury or death of any

12         person or the physical damage to property or property rights or by reason

13         of the termination, disturbance, interruption or other interference with

14         services of any type including, without limitation, any aerial or

15         underground installation, utility or other facility damaged, harmed or

16         disturbed, or caused to be damaged, harmed or disturbed by contractor

17         or subcontractor.  Contractor shall be responsible for each and every

18         violation of easements and rights-of-way caused by the obstruction of

19         streets, alleys, sidewalks and shall be responsible for any personal injury

20         or death or physical damage to property resulting from such

21         obstructions, or violations of easements or rights-of-way.

22    B.   Contractor shall also be fully responsible for and indemnify, defend and

23         hold Adelphia harmless from any damages, losses or claims resulting

24         from Contractor's failure to advise Adelphia of any problem or any

25         nonconforming existing conditions, or any errors or omissions in the

26         plans specifications pertaining to work to be performed by Contractor

27         hereunder in accordance with this Agreement of which it is aware or

28         reasonably should have been aware.

LAW OFFICES OF
**RYAN &
LIFTER**
A PROFESSIONAL CORPORATION
2010 Crow Canyon Pl. Ste. 300
San Ramon, CA 94583-1621
TEL: (925) 884-2080
FAX: (925) 884-2090

12

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\L637b\Pleadings\2ndAmendedX-Complaint.wpd

C.      Contractor also specifically acknowledges and agrees that it shall

indemnify, defend and hold Adelphia harmless from all damages, claims

or liabilities arising out of Contractor's failure to comply with the notice

and mark out provisions of any utility regulation or practice.

D.      Contractor shall defend all suits and claims, and shall hold and save

Adelphia harmless from liability of any nature or kind; including, but

not limited to, costs and expenses for or on any account of infringement

of any article or process supplied by Contractor; and incorporated or

used in the work to be performed under this Agreement including its use

by Adelphia.

E.      Contractor shall indemnify, defend and hold harmless Adelphia from

and against all suits or claims based upon any injury (including death) or

loss to any persons or property that may occur in the course of

performance by this Agreement by Contractor whether such claim shall

be made by any employee or subcontractor of Contractor or by a third

person and whether or not it shall be claimed or found by a court of law

or administrative authority that the injury (including death) was caused

through the acts, omissions or wrongdoing of Contractor and, at its own

expense, Contractor shall defend any and all such actions and shall pay

all charges of attorneys and all costs and expenses arising therefrom.

The limits of liability provided in any insurance policy shall not be a

limit to Contractor's liability.

F.      Contractor shall indemnify and hold harmless Adelphia from and

against all suits, claims, damages, costs, liabilities, including payment of

reasonable attorney's fees, for or on account of infringement of any U.S.

patent relating to any article or process supplied by Contractor and

incorporated or used in the work to be performed under this Agreement.

35.     Pauley also contracted to be responsible for "SAFETY" as follows:

LAW OFFICES OF
**RYAN &
LIFTER**
A PROFESSIONAL CORPORATION
2010 Crow Canyon Pl. Ste. 100
San Ramon, CA 94583-1433
TEL: (925) 884-2080
FAX: (925) 884-2090



13

A.      Contractor shall be responsible for safety related to and during the performance of the work hereunder. Contractor shall insure that its employees and the employees of its subcontractors are notified of and observe and abide by all safety regulations and laws including but not limited to those issued by Adelphia and any revisions of the foregoing that may hereinafter be applicable.

36.     Cross-defendant Pauley and ROE cross-defendants have breached the agreement with cross-complainant by failing to defend and indemnify cross-complainant pursuant to this agreement in response to cross-complainant's tender of the defense and indemnity to Pauley and ROE cross-defendants.

37.     As a result of the foregoing breaches, acts and omissions of cross-defendant Pauley and ROE cross-defendants in breaching the agreement, cross-complainant has been damaged in an amount according to proof, including but not limited to attorney fees and costs in defending this action and is entitled to recover those attorney fees and costs from Pauley and ROE cross-defendants and is further entitled to indemnity.

## THIRD CAUSE OF ACTION

**(Unjust Enrichment Against Pauley Const., Inc. and ROES 1-10, inclusive only)**

38.     Cross-Complainant incorporates by referenced herein paragraphs 1 through 37 of the general allegations.

39.     Cross-Complainant and Pauley agreed to the fixed price schedule in the Contract, in part, based on Pauley's agreement to indemnify and make Cross-Complainant a named insured. The indemnity and named insured provisions of the Contract are a significant benefit to Cross-Complainant.

40.     Adelphia fully performed its obligations pursuant to the Contract.

41.     Despite this, Pauley has refused and continues to refuse to indemnify Cross-Complainant and make Cross-Complainant a named insured.

42.     These acts unjustly enriched Pauley to the detriment of Cross-Complainant.

43.     Pauley claimed that the indemnity and named insured provisions are not enforceable because the contract was void *ab initio* due to Cross-Complainant's bankruptcy. Should this court rule

LAW OFFICES OF
**RYAN &**
**LIFTER**
+ PROFESSIONAL CORPORATION
7041 Commons Court • Ste. 100
San Ramon, CA 94583-1431
TEL: (925) 884-2080
FAX: (925) 884-2090

14

1  the contract is void *ab initio*, Cross-Complainant is still entitled to enforcement of the indemnity and

2  named insured's provisions under the theory of unjust enrichment.

3      44.    Cross-defendant Pauley and ROE cross-defendants failed to defend and indemnity

4  Cross-Complainant pursuant to the contract in response to Cross-Complainant's tender of the defense

5  and indemnity to Pauley and ROE cross-defendants.

6      45.    As a result, Pauley and ROE cross-defendants have been unjustly enriched to the

7  detriment of Cross-Complainant in an amount according to proof, including but not limited to

8  attorneys' fees and costs in defending the underlying complaint and in prosecuting this cross-

9  complaint and is entitled to recover those attorneys' fees and costs from Pauley and ROE cross-

10  defendants and it is further entitled to indemnity.

11                          **FOURTH CAUSE OF ACTION**

12              **(Implied Equitable Indemnity Against All Cross-Defendants)**

13      46.    Cross-complainant incorporates by reference herein paragraphs 1 through 45 of the

14  general allegations.

15      47.    Cross-complainant alleges that in the event Cross-complainant is found in some

16  manner legally liable to plaintiffs, to other cross-complainants, or to anyone else as a result of the

17  events and occurrences described in the aforementioned complaint attached as Exhibit D hereto,

18  and/or related cross-complaints, cross-defendants, and each of them, were negligent or in some

19  manner legally responsible in whole or in part for the damages, if any, sustained by plaintiffs, or other

20  cross-complainants.  In the event this cross-complainant is indeed  held jointly liable with cross-

21  defendants, cross-defendants shall be required to pay to this cross-complainant, plaintiffs or other

22  cross-complainants a sum equal to the proportional share of plaintiffs' or other cross-complainant's

23  damages proximately caused by the negligent and/or tortious conduct of cross-defendants.

24                           **FIFTH CAUSE OF ACTION**

25                 **(Contribution Against All Cross-Defendants)**

26      48.    Cross-complainant incorporates by reference herein paragraphs 1 through 47 of the

27  general allegations.

28  ///

LAW OFFICES OF
**RYAN &
LIFTER**
A PROFESSIONAL CORPORATION
2000 Crow Canyon Pl. Ste. 300
San Ramon, CA 94583-1431
TEL:  (925) 884-2080
FAX:  (925) 884-2090

15

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\1.6370\Pleadings\2ndAmendedX-Complaint.wpd

49.     Cross-complainant alleges that in the event Cross-complainant is found in some manner legally liable to plaintiff, other cross-complainants, or to anyone else as a result of the events and occurrences described in the aforementioned Complaint, and/or Cross-Complaints, then any injuries and/or damages to plaintiffs or other cross-complainants are solely and/or substantially caused by the negligence and carelessness of cross-defendants. Therefore cross-complainant is entitled to have the quantum of negligence of cross-defendants determined by this Court.

50.     Cross-complainant further alleges that in the event Cross-complainant is found in some manner legally liable to plaintiffs, other cross-complainants, or to anyone else as a result of the events and occurrences described in the aforementioned Complaint, and/or Cross-Complaints, this cross-complainant is entitled to contribution from cross-defendants in any amount which cross-complainant pays to plaintiffs or other cross-complainants in excess of this cross-complainant's pro rata share of the judgement.

## SIXTH CAUSE OF ACTION

### (Declaratory Relief Against All Cross-Defendants)

51.     Cross-complainant incorporates by reference herein paragraphs 1 through 50 of the general allegations.

52.     A dispute has arisen and an actual controversy exists between this cross-complainant and cross-defendants in relation to the following:

a.      The respective liability for plaintiffs and/or other cross-complainants damages, if any;

b.      Whether cross-defendants must defend and/or indemnify this cross-complainant for damages which Cross-complainant may be obligated to pay to plaintiffs and/or other cross-complainants; and

c.      Whether cross-defendants must pay the reasonable attorneys' fees and costs incurred by this cross-complainant in the defense of this action.

53.     A declaration of respective liability and rights to indemnity is necessary as this cross-complainant has no other adequate remedy at law and such declaration will avoid circuity and multiplicity of actions that will otherwise be required if this cross-complainant must defend this action and then bring a separate action against cross-defendants.

LAW OFFICES OF
RYAN &
LIFTER
A PROFESSIONAL CORPORATION
2010 Crow Canyon Pl. Ste. 100
San Ramon, CA 94583-1433
TEL:  (925) 884-2080
FAX:  (925) 884-2090

16

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\A37\Pleading\2ndAmendedX-Complaint.wpd

## SEVENTH CAUSE OF ACTION

(Express Indemnity Against Pauley Construction, Inc.
and ROES 1 through 10, inclusive, only)

54.     Cross-complainant incorporates by reference herein paragraphs 1 through 53 of the general allegations as if fully set forth herein in support of this fifth cause of action.

55.     Cross-complainant alleges that the agreement between cross-complainant and Pauley and ROE cross-defendants contains an express and implied indemnity provision which provides that Pauley and ROE cross-defendants will indemnify and hold harmless cross-complainant from any and all liability, including reasonable attorneys' fees and costs, incurred in any legal action naming cross-complainant as a defendant, arising from cross-complainant's execution of duties under the agreements, and also arising from the acts or omissions of such cross-defendants and as against any parties who may allege (as against cross-complainant and/or such cross-defendant) injuries, damages, statutory violations, and any other allegations. Cross-complainant has tendered its defense and indemnity in this action to Pauley, but its tender has thus far been refused. Based upon the foregoing, Cross-complainant is entitled to express indemnity from cross-defendants.

WHEREFORE, Cross-complainant prays for judgment against Pauley and ROE cross-defendants, as follows:

1.     For judgment against Pauley and ROE cross-defendants, and each of them declaring that Pauley and ROE cross-defendants are under a duty to provide an immediate defense to cross-complainant, to reimburse cross-complainant for costs and attorney fees incurred in the defense of this action due to Pauley and ROE cross-defendants' refusal to defend cross-complainant and to declare that Pauley and Roe cross-defendants indemnify cross-complainant for the full amount of any judgment entered against cross-complainant herein or any settlement entered into by cross-complainant with plaintiffs herein;

2.     For judgment against Pauley and ROE cross-defendants, and each of them, declaring that the liability for the damages alleged by plaintiffs must be born proportionally on a pro rata basis by plaintiffs, defendants, cross-complainant, cross-defendants, and each of them;

///

LAW OFFICES OF
RYAN &
LIFTER
A PROFESSIONAL CORPORATION
2010 Crow Canyon Pl. Ste. 100
San Ramon, CA 94583-1433
TEL: (925) 884-2080
FAX: (925) 884-2090

17

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\L637\Pleadings\2ndAmendedX-Complaint.wpd

3.    For judgment against Pauley and ROE cross-defendants, and each of them, declaring that cross-defendants are under a duty to contribute and indemnify cross-complainant in proportion to their own comparative responsibility for any damages plaintiffs might realize against cross-complainant;

4.    For total and complete indemnity for any judgment(s) rendered against cross-complainant;

5.    For judgment in proportionate share from other cross-defendants;

6.    For a judicial determination that cross-defendants were the legal cause of any injuries and damages sustained by plaintiffs, and that cross-defendants must indemnify cross-complainant either completely or partially for any sums of money which may be recovered against cross-complainant by plaintiff;

7.    For costs of suit and attorneys' fees according to proof; and

8.    For such other and further relief as is fair, just, and equitable.

Date: 3/15, 2007

**RYAN & LIFTER**
A Professional Corporation

By _____
    MICHAEL J. DALEY

Attorney for Defendant/Cross-Complainant
ADELPHIA COMMUNICATIONS CORP., aka
County Mendocino Cable TV dba Adelphia Cable
Communications

LAW OFFICES OF
**RYAN &
LIFTER**
A PROFESSIONAL CORPORATION
2000 Crow Canyon Pl. Ste. 330
San Ramon, CA 94583-1433
TEL: (925) 884-2080
FAX: (925) 884-2090

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\L637\Pleadings\2ndAmendedX-Complaint.wpd

## PROOF OF SERVICE

I, ANNETTE DI GIOVANNI, declare that I am over the age of 18 years and not a party to the within action; that my business address is 2010 Crow Canyon Place, Suite 330, San Ramon, California 94583-1344; and that on this date I served a true copy of the foregoing document(s) entitled: **ADELPHIA'S SECOND AMENDED CROSS COMPLAINT FOR BREACH OF CONTRACT, EXPRESS AND IMPLIED INDEMNITY, CONTRIBUTION, APPORTIONMENT OF FAULT AND DECLARATORY RELIEF AGAINST PAULEY CONSTRUCTION, INC. AND ROES 1 THROUGH 50, INCLUSIVE** on the parties in this action by placing a true copy thereof in a sealed envelope addressed as follows:

### SEE ATTACHED SERVICE LIST

_____ (By Overnight Courier) I caused each envelope, with postage fully prepaid, to be sent by _____.

__X__ (By Mail) I caused each envelope with postage fully prepaid to be placed for collection and mailing following the ordinary business practices of Ryan & Lifter.

_____ (By Hand) I caused each envelope to be delivered by hand to the offices listed above.

_____ (By Telecopy) I caused each document to be sent by Automatic Telecopier to the number as indicated above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 26, 2007, at San Ramon, California.

ANNETTE DI GIOVANNI

LAW OFFICES OF
**RYAN &
LIFTER**
A PROFESSIONAL CORPORATION
2010 Crow Canyon Pl. Ste 330
San Ramon, CA 94583-1413
TEL: (925) 884-2080
FAX: (925) 884-2090

19

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\1637\Pleadings\2ndAmendedX-Complaint.wpd

1

SERVICE LIST
Tuiaki v. Pacific Gas & Electric Company, et al.
San Francisco County Superior Court No. CGC 03-419761

2

3

4    **Attorney for Defendant PAULEY CONSTRUCTION, INC.**
Jeffrey M. Vucinich, Esq.

5    CLAPP, MORONEY, BELLAGAMBA & VUCINICH

6    1111 Bayhill Drive, Suite 300
San Bruno, CA 94066

7    (650) 989-5400/FAX: (650) 989-5499

8    **Attorney for Defendants ADELPHIA COMMUNICATIONS and PACIFIC BELL**

9    Robert Ford, Esq.
Rueben Jacobsen, Esq.

10    LEWIS, BRISBOIS, BISGAARD & SMITH
One Sansome Street, Suite 1400

11    San Francisco, CA 94104
(415) 362-2580/FAX: (415) 434-0882

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
**RYAN &
LIFTER**
A PROFESSIONAL CORPORATION
2000 Crow Canyon Pl., Ste. 300
San Ramon, CA 94583-1433
TEL: (925) 884-2080
FAX: (925) 884-2090

ADELPHIA'S SECOND AMENDED CROSS COMPLAINT AGAINST PAULEY CONSTRUCTION, INC.
H:\DATA\CUSTOMER\L637\Pleadings\2ndAmendedX-Complaint.wpd

NOV 27 2000

# FIXED PRICE CONSTRUCTION CONTRACT

## THIS AGREEMENT MADE AS OF

### THE 7th DAY OF JULY

Between      CENTURY MENDOCINO CABLE TV.

d/b/a Adelphia Cable Communications
having a place of business at
Main at Water Street
Coudersport, PA. 16915
Hereinafter referred to as "Adelphia"

And      PAULEY CONSTRUCTION, INC.

having a place of business at

2021 WEST MELINDA LANE

PHOENIX, ARIZONA 85027

Hereinafter referred to as "Contractor"

WITNESSETH THAT IN CONSIDERATION OF the promises and mutual covenants
and agreements herein contained, the parties hereto agree as follows:

1.    DEFINITIONS

As used through this Contract, the following terms shall have the meanings
set forth below:

TERMS – MEANING

A.    "Advise"
- Advise in writing.

B.    "Appoint"
- Appoint in writing.

EXHIBIT NO.
TAYLOR SCOTT

i

**EXHIBIT A**

Revised: November 10, 1999

C.    "Approval"                    – Approval in writing.

D.    "Change Order"               – A written order signed by the Owner
                                      directing the Contractor to make changes
                                      in the work without the consent of the
                                      Contractor.

E.    "Contract Amendment"         – A written alteration in "Contract
                                      Modification" any part of the Contract
                                      Whether accomplished by unilateral action
                                      in accordance with a contract provision, or
                                      by mutual action of the parties. It includes
                                      change orders and notices of termination.

F.    "Designate"                  – Designate in writing.

G.    "Direction"                  – Direction in writing.

H.    "Includes"                   – Includes but is not limited to.

I.    "May"                        – May is permissive, however, the words
                                      "no person may" mean that no person is
                                      required, authorized, or permitted to do
                                      the act prohibited.

J.    "Owner"                      – Adelphia or person or persons designated
                                      in writing who are authorized to act on
                                      behalf of Adelphia. This designation shall
                                      be made by Adelphia on or before the
                                      date work commences under this
                                      Contract.

K.    "Shall"                      – Shall is imperative.

L.    "Statement of Work"          – All specifications, drawings, data and
                                      other information included or referenced in
                                      the Statement of Work.

M.    "Subcontractor"              – All persons, vendors and entities
                                      furnishing work, property or services to the
                                      Contractor for use on this Contract.

N.    "Work"                       – Includes civil works, installation, Contract
                                      line items and services.

Revised: November 10, 1999

2

PAULEY 0021

2.    SCOPE OF WORK

THE Contractor shall furnish all the labor, transportation, construction equipment, services and tools necessary to complete the work for the Owner's MENDOCINO   Rebuild Construction as set forth in Exhibit "A" entitled "Statement of Work, dated 7 JULY 00, hereinafter referred to as the "SOW".

3.    PERIOD OF PERFORMANCE

A.    The work to be accomplished under this Contract shall commence on 15 OCT 00 and be completed on 31 JUL 01 .

B.    Specific milestones and completion dates for the work are set forth in Exhibit "C" entitled "Performance Schedule", dated 7 JUL 00 .

4.    CONSIDERATION AND PAYMENT

A.    Subject to the limitations and other conditions contained in this Contract, the price of work and items required by the Contract is located in "Exhibit B".

B.    Payment will be in accordance with Exhibit "B: entitled "Payment Schedule", dated 7 JUL 00.

5.    BONDS

A.    Payment Bond – The Contractor shall furnish to Adelphia a payment bond, in a form acceptable to Adelphia and with a surety or sureties acceptable to Adelphia, for the protection of those furnishing material, equipment or labor in connection with the work to be performed under this contract.  The penal sum of the payment bond shall be $ N/A

B.    Performance Bond – The Contractor shall furnish to Adelphia a performance bond, in a form acceptable to Adelphia and with a surety or sureties acceptable to Adelphia, to insure completion of the work to be performed under this Contract.  The penal sum of the performance bond shall be $ N/A

Revised: November 10, 1999

3

PAULEY 0022

C.     The bonds required pursuant to this Article shall be effective as of
       N/A        and shall be furnished to Adelphia by the Contractor on or
       before N/A    .

D.     If any surety upon any bond furnished in connection with this Contract
       becomes unacceptable to Adelphia, or if any such surety fails to
       furnish reports as to its financial condition from time to time as may be
       requested by Adelphia, the Contractor shall promptly furnish such
       additional security, as may be required from time to time, to protect the
       interests of Adelphia and of persons or other entities supplying labor or
       materials for the work.

6.     INSPECTION AND ACCEPTANCE

A.     Inspection and test by Adelphia of material and workmanship required
       by this Contract shall be made at reasonable times and at the site of
       the work, unless Adelphia determines that such inspection or test of
       material which is to be incorporated in the work shall be made at the
       place of production, manufacture, or shipment of such material. To the
       extent specified by Adelphia at the time of determining to make off-site
       inspection or test, such inspection or test shall be conclusive as to
       whether the material involved conforms to the Contract requirements.
       Such off-site inspection or test shall not relieve the Contractor of
       responsibility for damage to or loss of the material prior to acceptance,
       nor in any way affect the continuing rights of Adelphia after acceptance
       of the completed work under the terms of paragraph F, of this clause.

B.     The Contractor shall replace, without charge, any material or correct
       any workmanship found by Adelphia not to conform to the Contract
       requirements, unless Adelphia consents to accept such material or
       workmanship with an appropriate reduction in the Contract price. The
       Contractor shall segregate promptly and remove rejected material from
       the work site.

C.     If the Contractor does not replace promptly rejected material or correct
       rejected workmanship, Adelphia:

       (1)    may, by Contract or otherwise, replace such rejected material or
              correct such workmanship and charge the cost thereof to the
              Contractor, or

       (2)    may terminate the Contractor's right to proceed in accordance
              wit the "Termination For Default" clause.

Revised: November 10, 1999

4

D.    The Contractor shall furnish promptly, without additional charge, all facilities, labor, and material reasonably needed for performing such safe and convenient inspection and test as may be required by Adelphia. All inspection and test by Adelphia shall be performed in such manner as to not unnecessarily delay the work. Special, full size, and performance tests shall be performed as described in the SOW. The Contractor shall be charged with any additional cost of inspection when material and work are not ready at the time specified in the Contract for inspection.

E.    Should it be considered necessary or advisable by Adelphia at any time, before acceptance of the entire work to make an examination of work already completed, by removing or tearing out same, the Contractor shall, on request, promptly furnish all necessary facilities, labor and material. If such work is found to be defective or nonconforming in any material respect, the Contractor shall bear all the expenses of such examination and of satisfactory reconstruction. If, however, such work is found to meet the requirements of the Contract, an equitable adjustment shall be made in the Contract price to compensate the Contractor for the additional work involved in such examination and reconstruction and, if completion of the work has been delayed thereby, the Contractor shall, in addition, be granted a suitable extension of time.

F.    Final acceptance by Adelphia shall be made as promptly as practicable after completion and inspection of all work required by this Contract. Acceptance shall be final and conclusive except as regards latent defects, fraud, or such gross mistakes as may amount to fraud, or with respect to Adelphia's rights under the "Warranty of Construction" clause.

G.    Final acceptance shall be evidenced by Adelphia's certification to the Contractor that all work has been completed, inspected and accepted by Adelphia.


7.    USE AND POSSESSION PRIOR TO COMPLETION

A.    Adelphia shall have the right to take possession of or use any completed or partially completed part of the work. Such possession or use shall not be deemed an acceptance of any work not completed in accordance with Contract.

B.    While Adelphia is in such possession, the Contractor, notwithstanding the "Permits and Responsibilities" clause, shall be relieved of the

Revised: November 10, 1999

5

PAULEY 0024

responsibility for damage or destruction to the work in the possession of Adelphia except for damage and destruction resulting from the Contractor's fault or negligence.

8.    CONTRACT ADMINISTRATION

Notwithstanding any other provisions of the Contract or any document referenced herein, only the Senior Director of Capital Projects, on behalf of the Owner, is authorized to make the changes in or redirect the work required by this Contract. Where Adelphia's approval is required under the terms of this Contract, it shall be construed to mean the approval of the Project Supervisor. In the event the Contractor effects any change at the direction of any other person, the change shall be considered, as having been made without authority and an adjustment shall not be made in Contract price or performance schedule as a result thereof.

9.    ARCHITECTURAL DESIGNS AND DATA-TITLE TO VEST IN ADELPHIA

A.    Title to all drawings, designs, specifications, architectural designs of buildings and structures, notes and other architect-engineering work produced in the performance of this Contract, or in contemplation thereof, and all as-built drawings produced after completion of the work, hereinafter collectively referred to as "data", shall vest in Adelphia. The data remain the sole property of Adelphia and may be used by Adelphia on any other work without additional cost to Adelphia. The Contractor shall not assert any rights or establish any claim to the data, under the design patent or copyright laws, and shall not publish or reproduce such data in whole or in part or in any manner or form; or authorize others to do so, without the written consent of Adelphia.

B.    With respect to any architectural design which Adelphia desires to protect by applying for and prosecuting a design patent application or otherwise, the Contractor shall furnish to Adelphia such duly executed documents and other papers, prepared by Adelphia, as are deemed necessary to vest in Adelphia the rights granted to it under this clause.

C.    For a period of three (3) years after completion of the work, the Contractor shall furnish and provide access to the originals or copies of all such materials upon the request of Adelphia.

Revised: November 10, 1999

6

PAULEY 0025

10.    DATA-WITHHOLDING PROVISION

Notwithstanding any other provision of this Contract, there shall be withheld from final payment, the amount of five percent (5%) of the Contract price, until such time as all data required hereunder is delivered to and accepted by Owner.


11.    OWNER FURNISHED PROPERTY

A.    Furnished Property

Adelphia shall deliver to the Contractor for incorporation into the work to be performed, the property described in "Exhibit D" as Adelphia furnished property, hereinafter referred to a "property". All property shall be identified as property of Adelphia. The property shall be used exclusively on the work required by this Contract. The Contractor shall establish procedures for the inventorying, storage, maintenance, and inspection of the property. Records of such shall be made available to Adelphia upon request.

B.    Delivery

The performance schedule of this Contract is based upon the premise that property suitable for use will be delivered to the Contractor at the times stated, if not so stated, in sufficient time to enable the Contractor to meet the performance schedule. If the property is not delivered to the Contractor by such time or times, Adelphia shall, upon timely written request made by the Contractor, make a determination of the extent of the delay, if any, incurred by the Contract price, or both, and any other contractual provision affected by such delay, in accordance with the "Changes" clause. If the property is received by the Contractor in a condition which makes it not suitable for its intended use, the Contractor shall, upon receipt thereof, notify Adelphia of such fact. Upon such notice, Adelphia shall advise the Contractor of the disposition to be made of the property and issue a change order, with respect to such property, under the "Changes" clause.

C.    Risk of Loss

The Contractor assumes the risk of, and shall be responsible for, any loss or damage to property furnished under this clause upon its delivery to the Contractor. Contractor shall maintain adequate insurance to cover this risk.

Revised: November 10, 1999

7

PAULEY 0026

D.   Access

Adelphia, and any persons designated by Adelphia, shall at all reasonable times have access to the premises where the property is located for the purpose of inspecting the property.

E.   Changes in Property

(1)   By notice in writing, Adelphia may:

(a) increase, decrease or withdraw the property provided or to be provided by Adelphia under this clause, or

(b) substitute other property for property to be provided by Adelphia. The Contractor shall promptly take such action as Adelphia may direct with respect to the removal and shipping of property delivered and later withdrawn by such notice.

(2)   Upon any increase, decrease, withdrawal or substitution of property pursuant to paragraph E. 1 above, Adelphia, upon the written request of the Contractor or on Adelphia's own accord, shall equitably adjust such contractual provisions as may be affected by the increase, decrease, withdrawal or substitution in accordance with the "Changes" clause.

F.   Title

Title to all property shall remain in Adelphia.

12.   SUBCONTRACTORS

Within five days after the award of any subcontract(s), either individually or cumulatively in excess of $10,000.00 by the Contractor, the Contractor shall deliver to Adelphia a statement setting forth the name and address of the subcontractor and a summary description and the cost of the work subcontracted. Nothing contained in this clause shall create any contractual relation between the subcontractor and Adelphia.

13.   CONDITIONS AFFECTING THE WORK

The Contractor shall be responsible for having taken steps reasonably necessary to ascertain the nature and location of the work, and the general and local conditions, which can affect the work or the cost thereof. Failure by

Revised: November 10, 1999

PAULEY 0027

the Contractor to do so will not relieve the Contractor from responsibility for successfully performing the work without additional expense to Adelphia. Adelphia does not assume responsibility for any understanding or representations concerning conditions made by any of its officers, employees or agents prior to or during the performance of this Contract, unless such understanding or representations are expressly stated in this Contract.

14.    CHANGED CONDITIONS

The Contractor shall promptly, and before such conditions are distributed, notify Adelphia in writing of:

A.    Subsurface or latent physical conditions at the site differing materially from those indicated in this Contract, or

B.    Unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in this Contract. Adelphia shall promptly investigate the conditions, and if Adelphia finds that such conditions do materially differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performance of this Contract, an equitable adjustment shall be made and the Contract modified in writing accordingly. Any claim of the Contractor for adjustment hereunder shall not be allowed unless Contractor has given notice as required above.

C.    If such changes cause an increase or decrease in the Contractor's cost of, or time required for, performance of the Contract, an equitable adjustment shall be made and the Contract modified in writing accordingly. Any claim by the Contractor for an adjustment under this clause shall be asserted in writing within fifteen (15) days from the date of receipt by the Contractor of the Change Order unless Adelphia grants, in writing, an extension to the fifteen (15) day period. The Contractor shall also advise Adelphia of any decrease in the cost or the time for performance resulting from the change. Charges for any extra work or material will not be allowed unless made pursuant to this clause.

D.    Adelphia's Engineering and Technical Personnel may, from time to time, render assistance or give advise to, or effect an exchange of information with Contractor's personnel in a liaison effort concerning the work hereunder. However, such exchange of information or advice shall not vest the Contractor with authority to change the work hereunder or the provisions of this Contract, nor shall any change in

9

Revised: November 10, 1999

PAULEY 0028



• the work or provisions of this Contract be binding on Adelphia unless incorporated as a change in accordance with paragraph C. hereof.

16. NEW FEATURES

In the event the Contractor, prior to completion of the work hereunder and whether or not in connection with the performance of such work, develops:

A. Any improvement in the work called for by this Contract which is not incorporated in the work to be performed, or

B. Any alternative or improved method of accomplishing the work under this Contract, which is not employed in the performance hereof, the Contractor shall promptly give notice in writing to Adelphia as to any such improvement or method. Such notice shall include a general description sufficient to show the relationship thereof to work under the Contract and a statement giving the Contractor's best appraisal as to the prospective effect or influence which such improvement or method would have on the work required under this Contract if such improvement or method were incorporated as a requirement hereunder.

17. PRICE ADJUSTMENT FOR SUSPENSION, DELAYS, OR INTERRUPTION OF THE WORK BY ADELPHIA

A. Adelphia may order the Contractor, in writing, to suspend all or any part of the work for such period of time as Adelphia may determine to be appropriate for the convenience of Adelphia.

B. If, without the fault or negligence of the Contractor, the performance of all or any part of the work is for an unreasonable period of time, suspended, delayed, or interrupted by an act of Adelphia in the administration of the Contract, or by Adelphia's failure to act within the time specified, or if no time is specified within a reasonable time, an adjustment shall be made by Adelphia for any increase in the cost of performance of the Contract, excluding profit, necessarily caused by the unreasonable period of such suspension, delay, or interruption, and the Contract shall be modified in writing accordingly. An adjustment shall not be made to the extent that performance by the Contractor would have been prevented by other causes even if the work had not been so suspended, delayed, or interrupted. No claim under this clause shall be allowed:

Revised: November 10, 1999

PAULEY 0029

(1)   for any costs incurred more than twenty (20) days before the Contractor shall have notified Adelphia in writing of the act or failure to act involved, and

(2)   unless the claim, in an amount stated, is asserted in writing within sixty (60) days after the termination of such suspension, delay, or interruption.

18.   PROGRESS CHARGES AND REQUIREMENTS FOR OVERTIME WORK

A.   Time is of the essence in the performance of the Agreement and each and every provision hereof. Contractor shall begin performance hereunder by 15 OCT 00 . If Contractor does not begin performance within said period, Adelphia shall have the right to immediately terminate this Agreement period, Adelphia shall have the right to immediately terminate this Agreement without further notice in addition to any other remedies Adelphia may have under this Agreement or by operation of law. All construction to be performed by Contractor hereunder shall be in accordance with the System Schedules, which are attached hereto, marked Exhibit "C". The Contractor shall supply the necessary labor, tools, equipment and other incidentals to maintain said System Schedules.

19.   CONTRACTOR'S INSPECTION SYSTEM

The Contract shall:

A.   Maintain an adequate inspection system and perform such inspections as will assure that the work performed under the Contract conforms to contract requirements, and

B.   Maintain and make available to Adelphia adequate records of such inspections.

20.   ADELPHIA'S INSPECTORS

The work will be conducted under the general direction of Adelphia and is subject to inspection by Adelphia's appointed inspectors to insure strict compliance with the terms of the Contract. The inspectors are not authorized to change any provision of the specifications or any other part of this Contract without written authorization of Adelphia, nor shall the presence or absence of an inspector relieve the Contractor from any requirements of the Contract.

Revised: November 10, 1999

11

PAULEY 0030

21.  SUPERINTENDENCE BY CONTRACTOR

The Contract shall have a competent foreman or superintendent, satisfactory
to Adelphia, on the work site at all times during the performance of work.
Said foreman or superintendent shall have the authority to act for the
Contractor.

22.  SITE INVESTIGATION

The Contractor acknowledges that it has investigated and is satisfied as to
the conditions affecting the work, including but not restricted to those bearing
upon transportation, disposal, handling and storage of materials, availability of
labor, water, electric power, roads and uncertainties of weather, river stages,
tides or similar physical conditions at the site, the conformance and conditions
of the ground, the character of equipment and facilities needed preliminary to
and during prosecution of the work. The Contractor further acknowledges
that it has satisfied itself as to the work. The Contractor further acknowledges
that it has satisfied itself as to the character, quality and quantity of surface
and subsurface materials or obstacles to be encountered insofar as this
information is reasonably ascertainable from an inspection of the site,
including all exploratory work done by Adelphia, if any, as well as from
information presented by the drawings and specifications made a part of this
Contract. Any failure by the Contractor to acquaint itself with the available
information will not relieve Contractor from responsibility for estimating
properly the difficulty or cost of successfully performing the work. Adelphia
does not assume any responsibility for any conclusions or interpretations
made by the Contractor on the basis of the information made available by
Adelphia, its employees, or agents.

23.  INSURANCE

All policies shall contain all endorsements, including but not limited to
independent Contractors, broad from damage, products and completed
operations, explosion, collapse and underground hazard, comprehensive
form, contractual insurance and personal injury. No policy may be canceled
or materially changed without Adelphia's written consent. Adelphia shall
receive no less than sixty (60) days prior written notice of any such proposed
cancellation or material change. Adelphia reserves the right to terminate this
Agreement in the event of a breach or noncompliance with this Agreement.

Revised: November 10, 1999

PAULEY 0031

The Contractor shall furnish Adelphia with a copy of all policies of insurance required by this Section 24 as well as a certificate of insurance evidencing the existence of the aforementioned insurance and naming Adelphia as additional insured, delivered to the appropriate municipality, power company, telephone company and such other parties as may be required, certificates of insurance evidencing such insurance overage and naming such parties as additional named insured.

The Contractor shall obtain, at its sole cost and expense, any additional insurance or added coverage as may be necessary under local law, Adelphia's cable television franchise or advisable in Contractor's opinion to protect all the on-site property and equipment of Adelphia or third parties or any of Contractor's employees or subcontractors.

Before commencing work, Contractor shall procure and maintain insurance of the kinds and limits enumerated hereunder and on terms and with an insurance carrier satisfactory to Adelphia. Certificates of such insurance issued by the Contractor's insurance carrier shall be filed with Adelphia before the commencement of such work and shall set forth the following:

A.    Workmen's Compensation

Contractor's possession of Workmen's Compensation Insurance in accordance with the laws of the State of <u>CALIFORNIA</u>.

B.    Comprehensive General Liability

Bodily Injury                          $1,000.000 -- per occurrence

Property Damage                  $1,000,000 -- per occurrence

C.    Employer's Liability Coverage      $  500,000 -- per occurrence

D.    Comprehensive Automobile Liability -- Including non-owned and hired coverage

a.    property damage              $1,000,000
b.    bodily injury                     $1,000,000

E.    Umbrella Liability Insurance        $5,000,000

F.    Property Damage

That the Contractor has insured in the joint names of Adelphia and the Contractor for the work to be performed hereunder against all loss or

Revised: November 10, 1999

13

PAULEY 0032

damage from whatever causes, other than for excepted risks for which insurance cannot be obtained.

G.    Notice of Termination or Cancellation

That the foregoing insurance coverage shall not be terminated or cancelled unless Adelphia is given sixty (60) days prior written notice by the insurance carrier.

## 24.    INDEMNIFICATION

A.    Contractor agrees to indemnify, defend and hold Adelphia harmless from any and all liability, claims, damages, causes of action, expenses, fines, judgments, sums of money awarded by arbitration or otherwise and any demands whatsoever arising out of or resulting from the acts, omissions or wrongdoing on the part of any employee, officer, agent, servant or representative of Contractor or any subcontractor engaged by Contractor. This indemnification shall include, without limitation, indemnification from any and all liability, claims and demands whatsoever made by reason of the injury or death of any person or the physical damage to property or property rights or by reason of the termination, disturbance, interruption or other interference with services of any type including, without limitation, any aerial or underground installation, utility or other facility damaged, harmed or disturbed, or caused to be damaged, harmed or disturbed by contractor or subcontractor. Contractor shall be responsible for each and every violation of easements and rights-of-way caused by the obstruction of streets, alleys, sidewalks and shall be responsible for any personal injury or death or physical damage to property resulting from such obstructions, or violations of easements or rights-of-way.

B.    Contractor shall also be fully responsible for and indemnify, defend and hold Adelphia harmless from any damages, losses or claims resulting from Contractor's failure to advise Adelphia of any problem or any nonconforming existing conditions, or any errors or omissions in the plans specifications pertaining to work to be performed by Contractor hereunder in accordance with this Agreement of which it is aware or reasonably should have been aware.

C.    Contractor also specifically acknowledges and agrees that it shall indemnify, defend and hold Adelphia harmless from all damages, claims or liabilities arising out of Contractor's failure to comply with the notice and mark out provisions of any utility regulation or practice.

Revised: November 10, 1999

14

D.    Contractor shall defend all suits and claims, and shall hold and save, Adelphia harmless from liability of any nature or kind; including, but not limited to, costs and expenses for or on any account of infringement of any article or process supplied by Contractor, and incorporated or used in the work to be performed under this Agreement including its use by Adelphia.

E.    Contractor shall indemnify, defend and hold harmless Adelphia from and against all suits or claims based upon any injury (including death) or loss to any persons or property that may occur in the course of performance of this Agreement by Contractor whether such claim shall be made by any employee or subcontractor of Contractor or by a third person and whether or not it shall be claimed or found by a court of law or administrative authority that the injury (including death) was caused through the acts, omissions or wrongdoing of Contractor and, at its own expense, Contractor shall defend any and all such actions and shall pay all charges of attorneys and all costs and expenses arising therefrom. The limits of liability provided in any insurance policy shall not be a limit to Contractor's liability.

F.    Contractor shall indemnify and hold harmless Adelphia from and against all suits, claims, damages, costs, liabilities, including payment of reasonable attorney's fees, for or on account of infringement of any U.S. patent relating to any article or process supplied by Contractor and incorporated or used in the work to be performed under this Agreement.

## 25.    MATERIAL AND WORKMANSHIP

The Contractor agrees that it will employ only competent and responsible employees and will dismiss from work under this agreement any employees whom Adelphia deems incompetent, careless, insubordinate, unfit, guilty of improper conduct, or without sufficient skills to perform the job for which such person is employed. Adelphia reserves the right to have dismissed any contractor's employees who so shows the negative aspects in above-mentioned statement. Adelphia also shall have the right to interview and approve all contractors, supervisors, managers, and foremen for this job, including any subcontractors utilized by Contractor.

## 26.    WARRANTY OF CONSTRUCTION

A.    In addition to any other warranties in Exhibit "A" of this Contract, the Contractor warrants that the work performed under this Contract

Revised: November 10, 1999

**PAULEY 0034**

conforms to the Contract requirements and is free from defects in design or workmanship performed by the Contractor or any of its subcontractors.

B.    The warranty shall remain in effect for one (1) year for all work.

C.    The warranty periods shall commence on the date of final acceptance of the work, but with respect to any part of the work which Adelphia takes possession of or uses prior to final acceptance, said one (1) year warranty period shall commence on the date Adelphia takes possession or uses said part of the work.

D.    The Contractor shall remedy at its expense any such defect or failure to conform and is responsible for any damages to persons and property resulting from such defects or failure to conform. The Contractor shall also restore any work damaged in fulfilling the terms of this warranty.

E.    In addition to other rights and remedies provided by this clause, all subcontractors', manufacturers', and suppliers' warranties expressed or implied, respecting any work and materials shall, at the direction of Adelphia be enforced by the Contractor for the benefit of Adelphia. In such case if the Contractor's warranty under A. above has expired, any action directed by Adelphia to enforce a subcontractor's, manufacturers or supplier's warranty shall be at the expense of the Owner. The Contractor shall obtain any warranties, which the Contractor's subcontractors, manufacturers, or suppliers would give in normal commercial practice.

F.    If, within the warranty periods, any defect appears, then Owner shall have the right to take the following actions subject to G. below:

(1)    Retain such defective items or work and an equitable reduction will be made in the Contract price for such defective items or work; or

(2)    Return such defective items to the Contractor and require Contractor to repair or replace such defective items. Such repair or replacement shall be at the Contractor's sole expense at no cost to Adelphia including all related shipping costs and import duties, if applicable. Responsibility for the items while in transit shall be borne by the Contractor; or

(3)    Correct or replace such defective items or work with similar items and recover the total cost incurred by Owner, including

Revised: November 10, 1999

16

PAULEY 0035

shipping costs and import duties, if applicable, from the Contractor; or

(4) Require the Contractor to correct or replace the defective items for work.

G. Upon discovery or disclosure of any defect within the warranty periods provided hereby, the following conditions shall apply:

(1) Adelphia shall furnish written notice to the Contractor of the item or work involved and, if known to the Owner, set forth the nature of the defect.

(2) Within fifteen (15) days after receipt by the Contractor of the notification provided pursuant to G. 91), the Contractor shall provide the Owner, in writing, the following information:

   a. Acknowledgment of the notification given by Adelphia of the defect,

   b. The corrective action to be taken by the Contractor to remedy the defect,

   c. Disposition Instructions regarding the defective item or work,

   d. The date that the defective items or work shall be repaired, or replaced as required, or

   e. With the advance approval of Adelphia, submit a proposed price reduction to this Contract for Adelphia's consideration pursuant to F. (1) above.

H. Approvals by the Owner shall not release the Contractor from any obligations under the warranties set forth in this clause.

I. The terms "work" and "items" as used herein include related services and data to be delivered under this Contract except for normal maintenance items.

J. Items or work repaired or replaced pursuant to this clause shall be subject to all provisions of this clause to the same extent as items or work initially delivered, except that time elapsed after final acceptance and prior to written notification by Adelphia of the failure or defect shall be deducted from the warranty periods provided hereby for the

Revised: November 10, 1999

17

**PAULEY 0036**

purpose of computing time remaining under this warranty for repaired or replacement items or work. Any time subsequent to notification by Adelphia of a defect and prior to repair or replacement and redelivery shall be added to the period of this warranty for the purpose of computing time remaining under this warranty.

K.  The aforesaid warranties shall survive acceptance and payment and shall not be deemed to be the exclusive rights of the Owner but shall be in addition to the other rights of the Owner under law and the terms of this Contract.

## 27.  MANUFACTURERS WARRANTIES

Manufacturers warranties received by the Contractor which are applicable to any material equipment arts, property and services furnished by the Contractor under this Contract shall survive acceptance and payment, and shall run to Adelphia, its successors and assigns, and shall not be deemed to be exclusive.

## 28.  OPERATION AND STORAGE AREA

A.  All operations of the Contractor, including storage of materials, shall be confined to areas authorized or approved by Adelphia. No unauthorized or unwarranted entry upon, passage through, or storage or disposal of materials shall be made upon other premises. The Contractor shall hold and save Adelphia, its employees, officers and agents, free and harmless from liability of any nature or kind arising from any use, trespass or damage resulting from the Contractor's operations on premises of third persons.

B.  Temporary buildings, including storage sheds, shops and offices, shall be erected by the Contractor only with the prior written approval of Adelphia, and shall be built with labor and materials furnished by the Contractor without expense to Adelphia; and will be removed by Contractor at its expense upon the completion of the work. With the written consent of Adelphia, such structures may be abandoned and need not be removed.

C.  The Contractor shall, under regulations prescribed by Adelphia; use only established roadways or construct and use such temporary roadways as may be authorized by the Owner. When materials are transported in the execution of the work, vehicles shall not be loaded beyond the loading capacity recommended by the manufacturer of the

Revised: November 10, 1999

18

PAULEY 0037

vehicles or prescribed by any law or regulation. When it is necessary to cross curbing, or sidewalks protection against damage shall be provided by the Contractor and any damaged roads curbings or sidewalks shall be repaired by, or at the expense of, the Contractor.

29.    SAFETY

A.    Contractor shall be responsible for safety related to and during the performance of the work hereunder. Contractor shall insure that its employees and the employees of its subcontractors are notified of and observe and abide by all safety regulations and laws including but not limited to those issued by Adelphia, and any revisions of the foregoing that may hereinafter be applicable.

B.    Said laws and regulations are minimum requirements for the Contractor. Contractor shall take any additional precautions necessary or proper under the circumstances to prevent injury to or death of persons and/or damage to property. Compliance with such laws and regulations by the Contractor or Adelphia's approval of any actions or procedures of the Contractor, as provided herein shall not relieve the Contractor of its obligations to use due care in performing the work required under this Contract.

C.    Contractor shall immediately notify Adelphia of any damage to property and/or injury to, or death of, persons, which occurs in connection with or is in any way related to the work. Contractor shall furnish Adelphia a written report of the aforesaid as soon as possible.

30.    PROTECTION OF EXISTING VEGETATION, STRUCTURES, UTILITIES, AND IMPROVEMENTS

A.    The Contractor will preserve and protect all existing vegetation such as trees, shrubs, and grass on or adjacent to the site of work which is not to be removed and which does not unreasonably interfere with the work. Care will be taken in removing trees authorized for removal to avoid damage to vegetation to remain in place. Any limbs or branches of trees broken during such operations or by the careless operation of equipment, or by workmen, shall be trimmed with a clean cut and painted with an approved tree pruning compound.

B.    The Contractor will protect from damage all existing structures, improvements or utilities at or near the site of the work, and will repair or restore any damage to such facilities resulting from failure to comply

Revised: November 10, 1999

19

PAULEY 0038

with the requirements of this Contract or the failure to exercise reasonable care in the performance of the work. If the Contractor fails or refuses to repair any such damage promptly, Adelphia may have the necessary work performed and charge the cost thereof to the Contractor or deduct the cost from payments due or to become due to the Contractor.

31.    IDENTIFICATION OF CONTRACTOR'S EMPLOYEES

The Contractor shall be responsible for furnishing to each employee and for requiring each employee engaged on the work site to display such identification as may be approved and directed by Adelphia. All prescribed identification shall immediately be delivered to Adelphia, for cancellation upon the release of any Contractor employee. The Contractor shall include a clause containing the substance of this clause in all subcontracts hereunder.

32.    REMOVAL OF CONTRACTOR'S/SUBCONTRACTOR'S UNSATISFACTORY EMPLOYEES

By written notice, Adelphia may require the Contractor to remove from the work any employee Adelphia deems incompetent, careless, or otherwise objectionable.

33.    NOTICE TO ADELPHIA OR LABOR DISPUTES

A.    Whenever the Contractor has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this Contract, the Contractor shall immediately give notice thereof, including all relevant information with respect thereto, to the Owner.

B.    The Contractor shall insert the substance of this clause, including this paragraph B., in any subcontracts hereunder. Each such subcontract shall provide that in the event its timely performance is delayed or threatened by delay by any actual or potential labor dispute, the subcontractor shall immediately notify the Contractor of all relevant information with respect to such dispute.

Revised: November 10, 1999

PAULEY 0039

34.    LAWS AND ORDIANCES

The Contractor shall comply with all of the applicable laws, ordinances, rules
and regulations including Federal, State and Municipal authorities and
departments relating to or affecting the work hereunder of any part thereof,
and shall secure and obtain any and all permits, licenses and consents as
may be necessary in connection therewith.

35.    PERMITS AND RESPONSIBILITIES

Without additional expense to Adelphia, the Contractor shall be responsible
for obtaining any necessary license and permits to operate as a contractor,
and for complying with all applicable laws, codes, and regulations, in
connection with the prosecution of the work.  Contractor shall also be
responsible for all materials delivered and work performed until completion
and acceptance of the work, except for any completed unit of construction
thereof which theretofore may have been accepted.

36.    INDUSTRIAL LAWS AND BENEFITS

The Contractor, in all matters relating to the Contract, shall be acting as an
independent contractor.  Neither the Contractor nor any of the persons
furnishing materials or performing work or services which are required by this
Contract are employees of Adelphia within the meaning of or the application
of any Federal, or State Unemployment Insurance law, or other Social
Security, or any Workmen's Compensation, Industrial accident Law, or other
Industrial or Labor Law.  The Contract, at its own expense, shall comply with
such laws, and assume all obligations imposed by any one or more such laws
with respect to this Contract.

37.    TERMINATION FOR CONVENIENCE

A.    Notice of Termination

The performance of work under this Contract may be terminated in its
entirety, or from time to time in part, by the Owner in accordance with
this clause.  Termination of work hereunder shall be effected by
delivery to the Contractor of a Notice of Termination, specifying the
extent to which performance of work under the Contract is terminated
and the date upon which such termination becomes effective.

Revised: November 10, 1999

PAULEY 0040

B.    Contractor's Obligations

After receipt of a Notice of Termination and except as otherwise directed by Adelphia, the Contractor shall:

(1)    Stop work under this Contract on the date and to the extent specified in the Notice of Termination.

(2)    Not place any further orders or subcontracts for materials, services or facilities except as may be necessary for completion of such portions of the work under this Contract as may not be terminated.

(3)    Terminate all orders and subcontracts to the extent that they relate to the performance of any work terminated by the Notice of Termination.

(4)    Assign to Adelphia, in the manner and to the extent directed by Adelphia, all of the rights, title and interest of the Contractor under the orders or subcontracts so terminated.

(5)    Settle all outstanding liabilities and all claims arising out of such termination of subcontracts subject to the approval of Adelphia which approval shall be final for all the purposes of this clause.

(6)    Complete performance of such part of the work as shall not have been terminated by the Notice of Termination; and

(7)    Take such action as may be necessary or as Adelphia may direct for protection and preservation of the property related to this Contract which is in the possession of the Contractor and in which Adelphia has or may acquire an interest.

(8)    Submit to Adelphia a list, certified as to quantity and quality, of items and materials in the termination inventory not previously disposed of by the Contractor.

C.    Submission of Termination Claim

After receipt of a Notice of Termination, the Contractor shall submit to Adelphia its termination claim, in the form prescribed by Adelphia. If the entire Contract is terminated, such claim shall be submitted promptly, but not later than six (6) months from the effective date of termination, unless one or more extensions in writing are granted by Adelphia, upon request of Contractor made in writing within such six

(6) month period or authorized extensions thereof. Upon failure of the Contractor to submit its termination claim within the time allowed, Adelphia may determine, on the basis of information available to Adelphia, the amount, if any, due to the Contractor with respect to the termination, and such determination shall be final. After Adelphia has made a determination under this paragraph, Adelphia shall pay the Contractor the amount so determined.

D.   Payment of Termination Claim

(1)   Subject to the provisions of paragraph C. above, the Contractor and Adelphia may agree upon the whole or any part of the amounts to be paid to the Contractor by reason of the total or partial termination of work pursuant to this clause, which amount or amounts may include a reasonable allowance for profit on work performed and Adelphia shall pay the agreed amount or amounts. However, such amount or amounts, exclusive of settlement costs, shall not exceed the total Contract price as reduced by the amount of payments otherwise made and as further reduced by the Contract price of work not terminated. Nothing in paragraph D. (2) below prescribing the amount to be paid to the Contractor in the event of the failure of the Contractor and the Owner to agree upon the whole amount to be paid to the Contractor by reason of the termination of work pursuant to this clause shall be deemed to limit, restrict, or otherwise determine or affect the amount or amounts which may be agreed upon to be paid to the Contractor pursuant to this paragraph D.

(2)   If the Contractor and the Owner fail to reach agreement, as provided in paragraph D. (1) above, upon the whole amount to be paid to the Contractor by reason of the termination of work pursuant to this clause, the Owner shall pay to Contractor the amounts determined by the Owner as follows, but without duplication of any amounts agreed upon in accordance with paragraph D. (1) above.

(a)   The total of:

(i)   The cost incurred in performance of work terminated, including initial costs and preparatory expenses allocable thereto, exclusive of any costs attributable to work or items paid for or to be paid for under D.(2) above; and

Revised: November 10, 1999

23

    (ii)    The cost of settling and paying claims arising out of the termination of work under subcontracts as provided in paragraph B. (5) above, exclusive of the amounts paid or payable on work or items accepted by the Owner prior to effective date of the Notice of Termination of work under this Contract, which amount shall be included in the cost on account of which payment is made under D. (2) (a) above; and

    (iii)    A ten percent (10%) profit on the costs described in D. (2) (b) (i) above; provided however, that if it appears that the Contract would have sustained a loss on the entire Contract had it been completed, a profit shall not be included or paid under this paragraph, and

    (b)    The reasonable costs of settlement, including accounting, legal, clerical, and other expenses reasonably necessary for the preparation of settlement claims and supporting data with respect to the terminated portion of the Contract and for the termination and settlement of subcontracts thereunder, together with reasonable storage, transportation, and other costs incurred in connection with the protection or disposition of the property allocable to this Contract.

    (3)    The total sum to be paid to the Seller under D. (2) (a) and (b) above shall not exceed the total Contract price, reduced by the amount of payments otherwise made and further reduced by the Contract price of work not terminated.

E.    Reduction of Claim

    (1)    Except to the extent that Adelphia shall have otherwise expressly assumed the risk of loss, there shall be excluded from the amounts of payment to the Contractor, under D. (2) (a) and (b) (I) above, the fair value as determined by Adelphia of property which is destroyed, lost, stolen, or damaged so as to become undeliverable to Adelphia.

    (2)    The obligation of Adelphia to make any payments under this clause shall be subject to deduction with respect to:

(a)     all unliquidated advance or other payments on account
        theretofore made to the Contractor applicable to the
        terminated portion of this Contract,

(b)     any claim which Adelphia may have against the
        Contractor, in connection with this Contract, and

(c)     the price for, or the proceeds of sale of, any materials,
        supplies or other things retained by the Contractor or
        sold, and not otherwise recovered by or credited to
        Adelphia.

F.      Adjustment in Price for Continued Portion

If the termination hereunder is partial, for the work not terminated by
the Notice of Termination, an appropriate equitable adjustment shall be
made in such price or prices of the continued portion of the Contract.
Unless an extension is granted in writing by Adelphia, the Contractor
shall submit its termination claim under this paragraph within ninety
(90) days from the effective date of the partial termination notice.

G.      Partial Payments

Adelphia may, from time to time, under such terms and conditions as
may be mutually negotiated, make partial payments on account
against costs incurred by the Contractor with respect to the terminated
portion of this Contract whenever, in the opinion of Adelphia, the
aggregate of such payments shall be within the amounts to which the
Contractor will be entitled hereunder. If the total of such payments is in
excess of the amount finally agreed upon or determined to be due
under this clause, such excess shall be payable by the Contractor to
Adelphia upon demand.

H.      Audit of Termination Costs

For the purpose of paragraph C. and D. above, the amounts of the
payments to be made by Adelphia to the Contractor shall be based
upon verification and/or audit by a certified public accounting firm
designated by Adelphia of the Contractor's actual allocable costs
stated in the Contractor's termination claim. The Contractor shall
preserve and make available to said accounting firm, at reasonable
times at the office of the Contractor, accounting records relating to the
work terminated hereunder; or photographs, microphotographs, or
other authentic reproductions thereof.

Revised: November 10, 1999

25

PAULEY 0044

38.    TERMINATION FOR DEFAULT

    A.    In the event Contractor

        (I)    fails to complete the work required within the time specified, or

        (II)    fails to make progress in the execution of the work so that timely completion is in jeopardy, or

        (III)    fails to comply with any provisions of this agreements, or

        (IV)    fails to comply with the specifications set out in Exhibit ":A", or

        (V)    is adjudicated as bankrupt, whether voluntary or involuntary, or

        (VI)    makes a general assignment for the benefit of creditors, or

        (VII)    commits any act of insolvency or becomes insolvent; then, in any such events, Adelphia may, at its option, terminate this agreement for default.

    B.    Upon the occurrence of any default by Contractor as aforesaid, Adelphia's rights will be cumulative as provided elsewhere in this Agreement and by operation of law and will include, but not be limited to, the following:

        (I)    Termination and replacement of Contractor, with costs incurred by Adelphia for such termination and replacement being reimbursed by Contractor to Adelphia;

        (II)    Contractor shall promptly pay to Adelphia all costs incurred by Adelphia for:

            (a)    replacement of Contractor furnished defective materials and damage by Contractor to Adelphia or Adelphia furnished materials, all on a cost basis;

            (b)    all cost (direct and overhead) incurred by Adelphia for construction services relating to repair or replacement or defective Contractor work;

            (c)    any extra cost incurred to recover systems schedules, which are greater than the costs of services contained in Exhibit "C" of this Agreement.

Revised: November 10, 1999

PAULEY 0045

(d)    Except as otherwise provided, it shall be a condition precedent to the exercise of any of Adelphia's rights under this paragraph, that:

Owner shall have given Contractor fifteen (15) days prior written notice of intent to exercise such right. If during such fifteen (15) day period Contractor shall eliminate the default or other reasons for terminations, these shall not be grounds for terminations hereunder, and this Agreement shall continue in full force and effect subject to any right which Adelphia may otherwise have to collect damages caused by said default.

C.    If the Contract refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in this Contract, or any extension thereof, or fails to complete said work within such time, Adelphia may, by written notice to the Contractor, terminate the Contractor's right to proceed with the work or such part of the work as to which there has been delay. In such event Adelphia may take over the work and prosecute the same to completion, by contract or otherwise, and may take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor. Whether or not the Contractor's right to proceed with the work is terminated the Contractor and its sureties shall be liable for any damage to Adelphia resulting from the Contractor's refusal or failure to complete the work within the specified time.

D.    If fixed and agreed liquidated damages are provided for in the Contract and if the Owner so terminates the Contractor's right to proceed, the resulting damage will consist of such liquidated damages until such reasonable time as may be required for final completion of the work together with any excess costs incurred by the Owner in completing the work.

E.    The Contractor's right to proceed shall not be terminated nor the Contractor charged with resulting damage if:

(1)    The delay in the completion of the work arises from unforeseeable causes as set forth in the "Excusable Delays" clause.

Revised: November 10, 1999

27

39.    MISCELLANEOUS

    A.    FOSSILS AND ANTIQUITIES

        a.    All fossils, coins, articles of value or antiquity, structures and other remains or things of geological, paleontological, or archaeological interest discovered by employees of the Contractor or employees of its subcontractors are deemed to be the property of Adelphia. Contractor shall take all reasonable precautions to prevent its employees or employees of its subcontractors from removing or damaging any said items, and shall immediately upon discovery thereof and before removal, advise Adelphia of such discovery and follow Adelphia's orders as to the disposition thereof.

        b.    Contractor shall advise applicable personnel, in writing, of Contractor's obligations under this clause and include a clause to this effect in all subcontracts.

    B.    CLAUSE HEADINGS

      The headings and subheadings of clauses contained herein are used for convenience and ease of reference and do not limit the scope or intent of the clause

    C.    CONFIDENTIAL RELATIONSHIP

      The Contractor shall treat as confidential all specifications, drawings, blueprints and other information supplied by Adelphia or obtained by the Contractor as result of performance under this Contract unless such is in the public domain. Prior to release of any information for publication that the work is being performed by the Contractor for Adelphia under this Contract, written permission must be obtained from Adelphia. The Contractor shall not disclose any information related to this Contract to any person not authorized by Adelphia, in writing, to receive it.

    D.    NO WAIVER OF CONDITIONS

      Failure of the Adelphia to insist on strict performance shall not constitute a waiver of any of the provisions of this Contract or waiver of any other default of the Contractor.

Revised: November 10, 1999

PAULEY 0047

E.    MODIFICATION OF CONTRACT

This Contract contains all the agreements and conditions under which
the work is to be performed and no course of dealing or usage of the
trade shall be applicable unless expressly incorporated in this
Contract. The terms and conditions contained in this Contract shall not
be added to, modified, superseded or otherwise altered except by
written modification signed by authorized representatives of Adelphia
and the Contractor.

F.    ERRORS AND OMISSIONS

a.    The Contractor shall be responsible for any defect, error or
omission in the execution plans, drawings, and specifications
submitted by the Contractor, regardless of whether or not
Adelphia had approved such plans, drawings and specifications.
The Contractor shall correct said errors or omissions and any
defective work associated therewith during the performance of
this Contract.

b.    Omissions from the drawings or specifications or the
misdescription of details of work which are manifestly necessary
to carry out the intent of the drawings and specifications, or
which are customarily performed, shall not relieve the
Contractor from performing such omitted or misdescribed details
of the work but they shall be performed as if fully and correctly
set forth and described in the drawings and specifications.

c.    The Contractor shall check all drawings immediately upon their
receipt and shall promptly notify the Owner of any
discrepancies. Figures marked on drawings, in general, shall
be followed in preference to scale measurements. Large-scale
drawings, in general, shall govern small-scale drawings. The
Contractor shall compare all drawings and verify the figures
before lying out the work and will be responsible for any errors,
which might have been avoided thereby.

G.    EXCUSABLE DELAYS

The Contractor shall not be liable for damages, including liquidated
damaged, if any, for delays in performance or failure to perform due to
causes beyond the control and without the fault or negligence of the
Contractor. Such causes include but are not limited to, acts of God,
acts of the public enemy, acts of the United States Government, acts

Revised: November 10, 1999

PAULEY 0048

of another contractor in performance of a contract with Adelphia, fires, floods, epidemics, quarantine restrictions, strikes, embargoes, unusually severe weather, or delays or subcontractors arising from unforeseeable causes beyond the control and without the fault or negligence of such subcontractors.

H.    ASSIGNMENT

The Contractor shall not assign or otherwise transfer is interests in this Contract in whole or in part, without the prior written consent of Adelphia and subject to such terms and conditions as Adelphia may impose.

I.    BANKRUPTCY

Adelphia may terminate this Contract in whole or in part by written or telegraphic notice:

a.    If the Contractor shall become insolvent or makes a general assignment for the benefit of creditors; or

b.    If a petition under any bankruptcy act or similar statue is filed by or against the Contractor and is not vacated with ten (10) days after it is filed. Termination under this clause shall be in accordance with "Termination For Default" clause.

J.    TAXES

The Contract price includes all applicable Federal, State and local taxes and similar levies, including any applicable sales tax.

K.    UTILITY SERVICES

1.    Adelphia will make available to the Contractor, from existing outlets and connections, the utilities specified in the SOW. Except as otherwise provided in the SOW, each utility shall be charged to or paid by the Contractor at the prevailing rates charged by Adelphia.

2.    The Contractor shall conserve utilities furnished without charge. The Contractor, at its own expense and in a workmanlike manner satisfactory to Adelphia, shall install and maintain all necessary temporary connections and distribution lines and, if necessary to determine charges, all meters required to measure

Revised: November 10, 1999

30

PAULEY 0049